IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| BELFOR USA GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:15-cv-01818-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| JAMES BANKS and REBECCA BANKS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on plaintiff and counterclaim defendant Belfor USA Group, Inc.'s ("Belfor") motion for summary judgment, ECF No. 40, motion to exclude defendants and counterclaimants James and Rebecca Banks' ("the Banks") antique experts, ECF No. 47, and motion to exclude the Banks' construction experts, ECF No. 49.  For the reasons set forth below, the court grants Belfor's motions to exclude the Banks' construction and antique experts and grants in part and denies in part Belfor's motion for summary judgment.

## I.   BACKGROUND

Belfor is Colorado corporation with a principal place of business in Birmingham, Michigan.  Compl. ¶ 2.  Belfor operates as a restoration company providing emergency disaster recovery and property restoration.  Id. ¶ 8.  The Banks are citizens of South Carolina.  Id. ¶ 3.  On November 11, 2011, a fire partially destroyed the Banks' home located on 816 South Main Street in Summerville, South Carolina.  Id. ¶ 9.  The parties entered into a contract on November 13, 2011, under which Belfor agreed to perform

fire-remediation and fire-restoration work on the Banks' home and their personal property.  Id. ¶ 10.

Under the terms of the contract, the Banks "transfer[red], assign[ed], and convey[ed] [] their right, title, and interest in and to the insurance policy proceeds" to Belfor.  Compl. Ex. A.  The Banks also agreed to "immediately endorse and tender all drafts produced" to Belfor.  Id.  Belfor performed the fire-remediation and restoration work and issued invoices to the Banks totaling $337,928.64.  Pl.'s Mot. 1.  Belfor alleges that the Banks have refused to pay the remaining balance of $161,593.79, despite receiving payment from its insurer for Belfor's materials and services.  Compl. ¶¶ 18–19; see also Pl.'s Mot. 2.

On April 28, 2015, Belfor filed the present action against the Banks, bringing claims for breach of contract, conversion, and quantum meruit.  On May 18, 2015, the Banks filed an answer, asserting counterclaims against Belfor for negligence, negligence per se, and violation of the South Carolina Unfair Trade Practices Act ("SCUPTA").  On September 9, 2015, the court granted in part and denied in part Belfor's motion to dismiss and dismissed the Banks' SCUPTA claim without prejudice.  Belfor filed a motion for summary judgment pertaining to its breach of contract claim and the Banks' negligence and negligence per se counterclaims, and two motions to exclude the Banks' experts on April 11, 2016.  The Banks filed a joint response to all three motions on April 29, 2016.[1]  The court conducted a hearing on all three motions on May 19, 2016.  The motions have been fully briefed and are ripe for the court's review.

---

[1] The Banks' joint response to all three motions is only six pages long.  Needless to say, the arguments pale in comparison to the hundreds of pages of documents submitted by Belfor.

## II.   STANDARD

### A.   Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  Any reasonable inferences are to be drawn in favor of the nonmoving party.  See Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012).  However, to defeat summary judgment, the nonmoving party must identify an error of law or a genuine issue of disputed material fact.  See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).

Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.  See Anderson , 477 U.S. at 252; Stone, 105 F.3d at 191.  Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)).  If the adverse party fails to provide evidence establishing that the factfinder could reasonably decide in his favor,

3

then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'"  Id. (quoting Anderson, 477 U.S. at 248).

### B.     Motions to Exclude

Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose to other parties the identity of any witness it may use at trial to present evidence.  If the witness is one retained or specially employed to provide expert testimony, the disclosure must be accompanied by a written report—prepared and signed by the witness.  Id.  The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1) (emphasis added).  "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

Id.

The court has "broad discretion" to determine whether the nondisclosure of a witness or evidence is substantially justified or harmless. See States Rack & Fixture, Inc. v. Sherwin–Williams Co., 318 F.3d 592, 597 (4th Cir. 2003). In determining whether a party's failure to disclose was substantially justified or harmless, this court is guided by consideration of five factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. See Southern States Rack And Fixture v. Sherwin–Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).

### III.   DISCUSSION

Belfor moves for summary judgment on its breach of contract claim and the Banks' negligence per se, negligent construction, and negligent damage to antiques counterclaims. Belfor also filed two motions to exclude the Banks' antique experts, ECF No. 47, and the Banks' construction experts, ECF No. 49. Because the court's rulings on Belfor's motions to exclude impact its ruling on Belfor's motion for summary judgment, the court will address the motions to exclude prior to the motion for summary judgment.

### A.   Motions to Exclude

Belfor filed two motions to exclude the Banks' antique experts and their construction experts for failure to comply with Federal Rule of Civil Procedure 26. The Banks provided a joint, broad response to both motions. Therefore, the court will address both motions together.

Belfor first moves to exclude the Banks' antiques experts, contending that the Banks have failed to produce an expert report as required under Federal Rule of Civil Procedure 26. Pl.'s Mot. ECF No. 47, at 2. To this day, the Banks still have not provided Belfor expert reports in compliance with Rule 26. Therefore, Belfor does not have any information regarding what the experts' opinions are, much less what evidence was examined, how the evidence was examined, how the values were calculated, or how any depreciation was calculated.

Belfor also moves to exclude the Banks' identified construction experts, Alan Ayers of Ashley River Builders and Justin Lee of Maxwell Builders. While the Banks identified the two experts, they did not file a Rule 26 expert witness disclosure for either of them and produced only two documents related to Ashley River Builders and Maxwell Builders during discovery, collectively referred to as the "Ashley River Report." Pl.'s Mot. 2, ECF No. 49. The Banks identified the experts to testify regarding "their inspection of the property and their preparation of the reports evidencing the poor workmanship performed by Belfor." Pl.'s Mot. Ex. 6. Interr. 1. Although Belfor requested the resumes of the construction experts, none were produced. Req. to Pro. 17. The only document relating to these two experts that the Banks produced is the Ashley River Report.[2]

---

[2] The Ashley River Report, attached to Belfor's motion for summary judgment as Exhibit 7, contains two documents, including three pages of a four-page estimate for repairs with several thumbnail pictures dated May 27, 2014 and a ten-page document containing a general description of the work to be performed, the reason, and the cost, with several corresponding pictures. The Ashley River Report provides estimates for construction repairs, the alleged faulty construction in the Banks' home, and the reasons for certain repair recommendations.

As stated above, Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose to other parties the identity of any witness it may use at trial to present evidence. If the witness is one retained or specially employed to provide expert testimony, the disclosure must be accompanied by a written report—prepared and signed by the witness. Id.  The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

The Ashley River Report does not comply with Rule 26 requirements; it is not signed, and it does not state the basis for the opinions or what facts or data were considered in forming the experts' opinions.  Further, the Ashley River Report does not provide the experts' qualifications or information from which the court can determine whether the experts are reliable and qualified to testify.  The Ashley River Report is even missing a page and has not been supplemented to account for the missing page.  The Ashley River Report is essentially a construction estimate.  In fact, the Ashley River Report is not a report at all.

The Banks "concede that the reports prepared by their experts are not in a format normally associated with expert reports." Defs.' Resp. 5.  However, the Banks contend that they have provided Belfor the entirety of what has been provided to them by their

experts. Id.  The Banks further argue that Belfor has been aware of the existence of the challenged reports and the identities of the proposed experts since the beginning of this case. Id.  Therefore, the Banks argue that their failure to comply with Rule 26 is harmless because there is no surprise. Id.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added).  The court has "broad discretion" to determine whether the nondisclosure of a witness or evidence is substantially justified or harmless.  See States Rack & Fixture, Inc. v. Sherwin–Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).  In determining whether a party's failure to disclose was substantially justified or harmless, this court is guided by consideration of five factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.  See Southern States Rack And Fixture v. Sherwin–Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).

"Rule 26 disclosures are often the centerpiece of discovery in litigation that uses expert witnesses, [and a] party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case." Carr v. Deeds, 453 F.3d 593, 604 (4th Cir. 2006) (citing Saudi v. Northrop Grumman Corp., 427 F.3d 271, 278–79 (4th Cir. 2005)). Therefore, a party's failure to disclose in accordance with the Rule cannot be considered

8

"justified" or "harmless" simply because the opposing party had an opportunity to depose the witness. See Carr, 453 F.3d 593 at 605. This would shift to the opposing party the burden that Rule 26 indisputably places on the party calling the witness. Id.

Although the Banks argue that there is no surprise because Belfor has known the identity of the experts for quite some time, the court disagrees. Belfor would undoubtedly be surprised by any expert opinions at this point in the litigation because it has not seen the opinions or the reasons for those opinions, the evidence supporting the opinions, or the experts' qualifications. See Wilkins v. Montgomery, 751 F.3d 214, 223 (4th Cir. 2014) (finding no abuse of discretion in district court's exclusion of expert when "[t]he disclosure was made after the agreed-upon expert disclosure date, after discovery was closed, after Appellee filed a motion for summary judgment, and on the very date set by the court for the filing of motions to exclude experts," and stating that "[i]t is hard to accept that these events would not serve as a surprise to Appellee, or that Appellee could easily cure such a surprise"). The discovery deadline has passed, and Belfor has filed its motion for summary judgment. To the extent the Banks rely on the fact that Belfor did not conduct depositions of the expert witnesses, this failure is explained by the fact that Belfor did not have expert reports from which to frame its interrogation at those depositions. Belfor does not carry the burden to discover information about the Banks' expert witnesses, and its decision not to depose them, as litigation strategy or otherwise, does not factor into the court's analysis under Rule 37. Therefore, the court does not find that such surprise could easily be cured.

Further, the Banks have provided no reason whatsoever for their failure to file the required expert reports, but simply argue that the failure is harmless because Belfor has

9

known the experts' identities for a long time.  The court does not find that this explanation, or lack thereof, constitutes harmless error or is substantially justified.  If so, Rule 26's requirements would be meaningless.  The Banks could have attempted to file proper expert disclosures in compliance with Rule 26 after Belfor filed its motions to exclude, but have not done so.  In sum, the Banks have done nothing to attempt to cure their noncompliance and have provided no legitimate reason for such noncompliance.

Therefore, the court grants Belfor's motions and excludes the antique and construction experts.

### B.    Motion for Summary Judgment

Belfor moves for summary judgment on its breach of contract claim and the Banks' negligence per se, negligent construction, and negligent damage to antiques counterclaims.  Belfor argues that the undisputed facts demonstrate that Belfor substantially completed the work and was not paid by the Banks.  Pl.'s Mot. 1.  Belfor also argues that the undisputed facts negate an essential element of the Banks' counterclaims, thereby precluding recovery.  Id.

#### i.    Negligent Construction Counterclaim

In their negligence counterclaim, the Banks allege that Belfor "had a duty to repair the home and to provide materials and services in accordance with applicable building codes, manufacturers' recommendations and in conformance with accepted construction and industry standards." Answer ¶ 42.  The Banks further allege that Belfor breached its duty by "negligently, recklessly and willfully failing to properly repair the home," and that its breach caused damage to items in the home.  Id. ¶¶ 43–46.  As a result, the Banks allege that they have suffered "an ascertainable loss of money and

10

property for which they are entitled to recover actual and punitive damages as may be determined by the trier of fact." Id. ¶ 47. Belfor argues that it is entitled to summary judgment on the Banks' negligence counterclaim because neither the Banks nor their experts have identified any code violations or produced any evidence that Belfor violated industry standards or that its work posed a serious risk of physical harm. Pl.'s Mot. 5–7. Therefore, Belfor contends that the Banks cannot overcome the economic loss rule. Id.

The economic loss rule "generally provides there is no tort liability for a defective product if the product damages only itself." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 666 S.E.2d 247, 250 (S.C. 2008), overruled by Sapp v. Ford Motor Co., 687 S.E.2d 47 (S.C. 2009) (citing Kennedy v. Columbia Lumber & Mfg. Co., 384 S.E.2d 730, 736 (S.C. 1989)). "However, where a defective product harms other property or causes physical injury, the losses are more than merely economic, the economic loss rule is inapplicable and a remedy lies in either tort or contract." Id. In Kennedy, the South Carolina Supreme Court created an exception to the economic loss rule. The court held that "a cause of action in negligence will be available where a builder has violated a legal duty, no matter the type of resulting damage. [However,] [t]he 'economic loss' rule will still apply where duties are created solely by contract." Kennedy, 384 S.E.2d at 737. Therefore, the South Carolina Supreme Court rejected the economic loss rule in the residential home building context, "leaving it viable in situations where a builder violates only a contractual duty." Colleton, 666 S.E.2d at 251 (emphasis added). In the residential homebuilding context, the Kennedy court "found a builder owes legal duties to a home buyer beyond the contract, and thus, a builder could be liable in tort for purely economic losses, where: '(1) the builder has violated an applicable building code; (2) the

builder has deviated from industry standards; or (3) the builder has constructed housing he knows or should know will pose a serious risk of physical harm.'" Id. (quoting Kennedy, 384 S.E.2d at 738).

In its motion for summary judgment, Belfor now argues that the Banks have been unable to establish any building code violations, deviations from industry standards, or that the construction posed a serious risk of physical harm as required to fall within the exception to the economic loss rule. Pl.'s Mot. 5–6. In response, the Banks assert that the Ashley River Report implicitly identifies building code violations. Defs.' Resp. 3 ("[A]lthough the report does not expressly state that the electrical system is, in a number of respects, not up to code, that conclusion is clearly implicit in the detailed listing of defective items.").

The only statements contained in the Ashley River Report relating to building code violations or deviations from industry standards include: (1) "Repair/replace all flashing that isn't up to code (chimneys, soffits, and fascia)," Pl.'s Mot. Ex. 7, at 1; (2) "There's a hole patch in the subflooring that's being held together by foam. This is not common [sic] building practice," id. at 6, (emphasis added); (3) "Staircase is currently not up to code. Treads and risers are not up to code," id. at 8 (emphasis added); (4) Circuits going to outside sconces are not wired correctly. The cannot [sic] run inside the wall due to common building practices," id. at 3; (5) The wiring under the house is on the ground and were never [sic] stapled 12/24 inches. This is against common building practices," id.; (6) "Required by code," id. (referencing wires and cables under the home). Therefore, the Banks argue that even though the Ashley River Report does not explicitly

state that Belfor violated specific building codes, such violations are implicit within the report.

In Interrogatory 14, Belfor requested that the Banks identify the specific item of work and the corresponding Dorchester County Building Code violated and state the facts demonstrating why Belfor's work failed to comply with the specific code. Pl.'s Mot. Ex. 6. The Banks directed Belfor to the Ashley River Report and stated that: "The representatives of Ashley River are presently compiling a list of the specific code sections involved. These answers will be supplemented as this information becomes available." Id. The Banks never provided supplemental responses. Other than the three times the word "code" is mentioned in the Ashley River Report in reference to the flashing, the staircase, and the wiring, there is absolutely no evidence in the record of building code violations. Further, the record does not contain any evidence of the specific codes violated, how Belfor's work violated the building code, the amount of damage attributable to the code violations, or the cost of bringing the work up to code. Further, the court has excluded the Banks' construction experts; therefore, there is no one to testify as to the alleged building code violations or the Ashley River Report.

Belfor also requested that the Banks provide a specific list of Belfor's work that did not comply with industry standards. Id. (Interrogatory 15). The Banks again directed Belfor to the Ashley River Report. Id. The only references to industry standards in the Ashley River Report is the phrase "common building practices" used twice regarding carpentry and electrical work. Pl.'s Mot. Ex. 7, at 6, 10. ("There's a hole patch in the subflooring that's being held together by foam. This is not common [sic] building practice."). Other than this phrase, there is no evidence that Belfor deviated from

industry standards. The Ashley River Report does not attribute the hole patch to Belfor's work. There is no evidence of the specific ways in which Belfor failed to comply with industry standards, the work on the home that does not comply with industry standards, the amount of damage specifically attributable to Belfor's alleged failure to comply with such standards, and the cost of bringing the work into compliance. Further, since the court excluded the Banks' expert witnesses, there is no expert to testify as to industry standards and Belfor's alleged deviation from those standards.

The court does not find the vague references to "common building practices" and broad statements of work not being up to "code" sufficient to overcome Belfor's motion for summary judgment. "[A] party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522. The Banks failed to identify, much less present evidence of, specific building code violations or deviations from industry standards attributable to Belfor's alleged negligent construction. Therefore, the court grants Belfor's motion for summary judgment as to the Banks' negligent construction counterclaim.

### ii. Negligence Per Se Counterclaim

In their negligence per se counterclaim, the Banks allege that Belfor "has repaired the home in a manner does [sic] not comply with standards within the construction industry or the Dorchester County Building Code because of the faulty construction." Id. ¶¶ 49–51. Belfor argues that it is entitled to summary judgment on the Banks' negligence per se counterclaim because the Banks have failed to allege that Belfor violated a statute. Pl.'s Mot. 7. The Banks' response does not specifically respond to this portion of

14

Belfor's motion. However, it appears that the Banks' arguments stated in the preceding section also apply here.

A building code violation can support a negligence per se claim. See Vigilant Ins. Co. of New York v. McKenney's, Inc., No. 7:09-cv-02076, 2012 WL 527613, at *3 (D.S.C. Feb. 15, 2012). However, as stated above, the Banks have failed to provide any evidence of specific building code violations. Therefore, the court also grants Belfor's motion for summary judgment as to the Banks' negligence per se counterclaim.

### iii.     Negligent Damage to Antiques Counterclaim

Belfor next argues that the Banks have failed to present any "competent evidence of damages" because the Banks' antique expert failed to file a Rule 26 disclosure. Pl.'s Mot. 8. In response, the Banks argue that they can provide sufficient valuations of the antiques as the property owners. Defs.' Resp. 4. The Banks contend that they are "perfectly competent to testify as to the value of their antiques both before and after [Belfor] damaged these items." Id.

"Ordinarily a property owner, who is familiar with his property and its value, may give his estimate of its value or the damage inflicted upon it even though he is not an expert." Austin v. Stokes-Craven Holding Corp., 691 S.E.2d 135, 146 (S.C. 2010) (citing Barton v. Superior Motors, Inc., 424 S.E.2d 524, 526 (S.C. Ct. App. 1992)); Hawkins v. Greenwood Dev. Corp., 493 S.E.2d 875, 881 (S.C. Ct. App. 1997) ("The rule that a property owner is competent to present an opinion as to the property's value is well recognized."); Whisenant v. James Island Corp., 281 S.E.2d 794, 796 (S.C. 1981) (noting that ordinarily a property owner, who is familiar with his property and its value, may give his estimate of its value or the damage inflicted upon it even though he is not an expert);

15

Abercrombie v. Abercrombie, 643 S.E.2d 697, 699 (S.C. Ct. App. 2007) (recognizing general rule in South Carolina that a property owner is competent to offer testimony as to the value of his property). "Unless the property owner's lack of knowledge of the value of his property is so complete so as to render it worthless, it is for a jury to assess the probative value of his testimony." Barton, 424 S.E.2d at 526.

Ms. Banks testified that she is very knowledgeable regarding antiques. See Ms. Banks Dep. 41:2–25 (testifying regarding her love of antiques and experience buying and selling them for years, including owning an antique business). However, as stated above, the Banks have provided absolutely no information whatsoever regarding the alleged damaged antiques. Although the Banks could have testified as to the value of the antiques, there is no evidence in the record of such value, and the Banks have not submitted affidavits attesting to the value and damage.

Belfor contends that it has continuously sought information regarding the value of the antiques and the alleged damage through discovery requests, but the Banks contend they have already provided the information. Id. (citing Interrogatory 16). Specifically, in Interrogatory 16, Belfor requested that the Banks list the damaged antiques, how much they paid for them, when they were purchased, the cost of repair, etc. Id. at Ex. 6. In response, the Banks stated: "The defendants have provided a complete list of the damaged items in the materials sent to counsel via e-mail. Representatives of Golden Antiques and Anna Margarites will testify as to the appraised value." Id. To this day, the Banks have not produced a list of the antiques or any of the information requested. Further, there is absolutely no deposition testimony regarding the damaged antiques, their value, or the cost of replacement. Moreover, the court excluded the Banks' antiques

expert. "[A] party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522. The Banks have failed to do so.

Therefore, the court grants Belfor's motion for summary judgment as to the negligent damage to antiques counterclaims.

### iv.     Breach of Contract

Lastly, Belfor argues that because it received a certificate of occupancy from the Town of Summerville for the improvements it made upon the Banks' property, it is entitled to recover for its substantial performance on the contract. Pl.'s Mot. 9. Therefore, Belfor argues, the Banks are only entitled to a setoff. Id. at 10–11. Belfor further argues that the Banks cannot prove a set-off because they have no construction expert, as set forth in Belfor's motion to exclude. Id. at 11. The Banks provide no response to Belfor's argument.

The cause of action for breach of contract requires the plaintiff to establish the following elements: (1) the existence of a contract, (2) a breach of the contract, and (3) damages to the plaintiff proximately resulting from the breach. Fuller v. Eastern Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (S.C. 1962). A breach occurs when a party to the contract fails to carry out a term, promise, or condition of the contract. See Freeman Dodge, Inc. v. Fin. Servs., Inc., 249 S.E.2d 897 (S.C. 1978)

In support of its motion, Belfor cites a certificate of occupancy issued by the Town of Summerville, arguing that it constitutes proof of substantial completion of the project and compliance with the 2006 International Residential Building Codes. Pl.'s Mot. 6 (citing S.C. Code Ann. § 15-3-640). South Carolina Code § 15-3-640 sets forth

the applicable statute of repose for claims arising out of the defective or unsafe condition of an improvement to real property. Murray v. D.R. Horton, Inc., No. 4:15-cv-00191, 2015 WL 9581758, at *3 (D.S.C. Dec. 30, 2015) ("The purpose of section 15-3-640 is to confer a substantive right on developers to be exempt from liability after a certain time period." (citing Holly Woods Ass'n of Residence Owners v. Hiller, 708 S.E.2d 787, 793 (S.C. Ct. App. 2011))). The statute states: "No actions to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property may be brought more than eight years after substantial completion of the improvement." S.C. Code Ann. § 15-3-640 (emphasis added). The statute further provides that:

> For any improvement to real property, a certificate of occupancy issued by a county or municipality, in the case of new construction or completion of a final inspection by the responsible building official in the case of improvements to existing improvements, shall constitute proof of substantial completion of the improvement under the provisions of Section 15-3-630, unless the contractor and owner, by written agreement, establish a different date of substantial completion.

"'[S]ubstantial completion' shall mean that degree of completion of a project, improvement, or a specified area or portion thereof (in accordance with the contract documents, as modified by any change orders agreed to by the parties) upon attainment of which the owner can use the same for the purpose for which it was intended." S.C. Code Ann. § 15-3-630.

Belfor argues that because it received a certificate of occupancy, it has substantially completed the improvements on the property. However, the provisions above outline what constitutes substantial completion for purposes of triggering the statute of repose. The aforementioned sections are found within Chapter 3 of Title 15, titled "Limitation of Civil Actions." The statute does not, however, set forth that a

18

contractor is deemed to have substantially complied with the terms of a contract. The statute outlines only that a certificate of occupancy shall constitute proof of substantial completion to trigger the statute of repose. Therefore, Belfor's argument that the certificate of occupancy proves that it substantially complied with the contract lacks merit.

The contract provides that Belfor "will perform all repair work in a good and workmanlike manner in accordance with [its] General Conditions, will have a policy of insurance in full force, will comply with local safety standards and will perform all work according to local building codes." Compl. Ex. 1. The court finds that there is a genuine issue of material fact as to whether Belfor and the Banks breached their duties under the contract. The deposition testimony creates a genuine issue of material fact as to whether Belfor breached its duty to perform the repair work in a good and workmanlike manner in accordance with its General Conditions. See, e.g., Ms. Banks Dep. 75:5–22 ("If someone was working on your house . . . and there was problem after problem after problem . . . There were so many problems that it was very unsettling to use to try to handle."), Mr. Banks Dep. 49:20–23 ("There's a bunch of shoddy work in there."), 50:15–25 ("Belfor stayed on, and they did not finish up what they said they were going to do. Initially they told us they would be through within four to six months. It was over a year before we could move back into the house."). "Summary judgment should not be granted even when there is no dispute as to the evidentiary facts if there is dispute as to the conclusions to be drawn from those facts." Gilliland v. Elmwood Properties, 391 S.E.2d 577, 579 (S.C. 1990) (citing Piedmont Engineers, Architects and Planners, Inc. v. First Hartford Realty Corp., 293 S.E.2d 706, 707 (S.C. 1982)). It is up to a jury to

determine whether Belfor substantially complied with the terms of the contract. Therefore, the court denies Belfor's motion for summary judgment as to its breach of contract claim.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Belfor's motion to exclude the antique experts, **GRANTS** Belfor's motion to exclude the construction experts, and **GRANTS IN PART** and **DENIES IN PART** Belfor's motion for summary judgment. Specifically, the court **GRANTS** Belfor's motion for summary judgment as to the Banks' negligence and negligence per se counterclaims, but **DENIES** Belfor's motion for summary judgment as to its breach of contract claim.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 14, 2016**
**Charleston, South Carolina**