**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| BELFOR USA GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:15-cv-01818-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| JAMES BANKS and REBECCA BANKS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on defendants and counterclaimants James and Rebecca Banks's ("the Banks") motion to set aside judgment, ECF No. 73. For the reasons set forth below, the court denies the Banks's motion.

## I.   BACKGROUND

Belfor USA Group ("Belfor") is a Colorado corporation with a principal place of business in Birmingham, Michigan. Compl. ¶ 2. Belfor operates as a restoration company providing emergency disaster recovery and property restoration. Id. ¶ 8. The Banks are citizens of South Carolina. Id. ¶ 3. On November 11, 2011, a fire partially destroyed the Banks's home located on 816 South Main Street in Summerville, South Carolina. Id. ¶ 9. The parties entered into a contract on November 13, 2011, under which Belfor agreed to perform fire-remediation and fire-restoration work on the Banks's home and their personal property. Id. ¶ 10.

Under the terms of the contract, the Banks "transfer[red], assign[ed], and convey[ed] [] their right, title, and interest in and to [any] insurance policy proceeds" owed in connection with the fire to Belfor. Compl. Ex. A, Belfor Contract. The Banks

1

also agreed to "immediately endorse and tender all drafts produced" to Belfor.  Id.  Belfor

performed the fire-remediation and restoration work and issued invoices to the Banks

totaling $337,928.64.  ECF No. 40 at 1.  Belfor alleges that the Banks have refused to pay

the remaining balance of $161,593.79, despite receiving payment from its insurer for

Belfor's materials and services.  Compl. ¶¶ 18–19.

On April 28, 2015, Belfor filed the present action against the Banks, bringing

claims for breach of contract, conversion, and quantum meruit.  On May 18, 2015, the

Banks filed an answer, asserting counterclaims against Belfor for negligence, negligence

per se, and violation of the South Carolina Unfair Trade Practices Act ("SCUPTA").  On

September 9, 2015, the court granted in part and denied in part Belfor's motion to dismiss

and dismissed the Banks' SCUPTA claim without prejudice.  Belfor filed a motion for

summary judgment pertaining to its breach of contract claim and the Banks's negligence

and negligence per se counterclaims, and motions to exclude the Banks's construction

and antique experts on April 11, 2016.  The court issued an order dated July 14, 2016,

granting the motions to exclude, and granting in part and denying in part the motion for

summary judgment as to the Banks's counterclaims ("July 2016 order").  ECF No. 65.

On July 20, 2016 the Supreme Court of South Carolina suspended the Banks's previous

counsel, David Collins ("Collins"), from the practice of law.  ECF No. 73, Ex. A, South

Carolina Supreme Court Order.

The Banks filed the present motion to set aside judgment on August 30, 2016.

ECF No. 73.  Belfor filed a response on September 16, 2016.  ECF No. 77.  The Banks

filed a reply on September 26, 2016.  ECF No. 78.  The motion has been fully briefed and

is now ripe for the court's review.

2

## II.  STANDARD

Federal Rule of Civil Procedure 60(b) provides:

[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  In order to obtain relief under Rule 60(b) the moving party must "show (1) that the Rule 60(b) motion is timely; (2) that [the non-moving party] will not suffer unfair prejudice if the default judgement is set aside; and (3) that that [the movant's defense] is meritorious."  Westlake Legal Group v. Yelp, Inc., 599 F. App'x 481, 484 (4th Cir. 2015) (quoting Heyman v. M.L. Mktg. Co., 116 F.3d 91, 94 n. 3 (4th Cir. 1997)).  When a moving party seeks relief under the catch-all provision of subsection (b)(6), he must also show the existence of "extraordinary circumstances."  Murchison v. Astrue, 466 F. App'x 225, 229 (4th Cir. 2012) (quoting Reid v. Angelone, 369 F.3d 363, 370 (4th Cir. 2004)).  "[E]xtraordinary circumstances [are those] that create a substantial danger that the underlying judgment was unjust."  Id. (alterations in original) (quoting Margoles v. Johns, 798 F.2d 1069, 1073 (7th Cir. 1986)).

3

### III.  DISCUSSION

The Banks argue that they are entitled to relief under Rule 60(b)(6) because Collins, their previous counsel, "seriously neglected" the case, and ask the court to set aside the July 2016 order to allow the Banks to submit expert disclosures and pursue discovery.  ECF No. 73 at 1, 6.  Belfor counters that this is not the type of "extraordinary" case for which Rule 60(b)(6) was designed, and that the Banks must be held accountable for Collins's "poor" handling on the case.  ECF No. 77 at 2.

Rule 60(b)(6) authorizes the Court to relieve a party from a final judgment for "any other reason that justifies relief."  Relief in this "catch all" category is exceedingly rare, In Re: Guidant Corp. Implantable Defibrilators Prod. Liab. Litig., 496 F.3d 863, 868 (8th Cir. 2007), and rests on a highly fact-intensive balancing of finality and doing justice, West v. Carpenter, 790 F.3d 693, 697 (6th Cir. 2015).

Although relief under Rule 60(b)(6) is rare, some courts have granted Rule 60(b)(6) motions in circumstances where a client seeks relief from judgment on the basis of extremely gross negligence of, or abandonment by, counsel.  See, e.g., United States v. Cirami, 563 F.2d 26, 34 (2d Cir. 1977) (finding an attorney's "constructive disappearance" from a case due to a psychological disorder is an "exceptional circumstance" justifying Rule 60(b)(6) relief; James v. United States, 215 F.R.D. 590, 594 (E.D. Cal. 2002) (finding "extraordinary circumstances" where attorney assured plaintiffs that everything was proceeding as planned even though he had missed the administrative filing deadline and was facing a motion to dismiss which he never opposed); Cmty. Dental Servs. v. Tani, 282 F.3d 1164, 1170 (9th Cir. 2002), as amended on denial of reh'g and reh'g en banc (Apr. 24, 2002) (finding gross negligence sufficient

4

for a Rule 60(b)(6) motion where attorney ignored repeated requests from the plaintiff's attorney, failed to engage in settlement discussions despite a court order, failed to attend numerous hearings, and did not oppose a motion to strike the defendant's answer).

Here, Collins responded to pleadings, engaged in motions practice,[1] and participated—albeit with sanctions—in discovery.  He attended the hearing for the motions to exclude expert testimony and motion for summary judgment, and the court ultimately allowed the Banks to proceed on their breach of contract claim.  ECF No. 65 at 1.  The Banks contend that Collins gave them "no reason at all" to believe that he was unable or unwilling to fully represent their interests.  ECF No. 73 at 3.  However, a review of the Banks's testimony regarding their interactions with Collins in the months leading up to Collins's July 20, 2016 suspension forecasts negligence.  The Banks testify that they "continuously reached out" to Collins about the status of the case but that "most of the time it would take him days or weeks to respond," and that in the months of June and July 2016 Collins failed to respond to five separate requests from the Banks for an update on the case.  ECF No. 73, Ex. 2 Banks Affidavit ¶ 10.  The Banks also testify that Collins did not contact them to prepare for their depositions on March 1, 2016, and that it

---

[1]     There is certainly a disparity in the volume of briefing for the motions to exclude and motion for summary judgment before the court, with the Banks's joint response to all three motions before the court comprising six pages, in comparison to the hundreds of pages of documents that Belfor submitted.  However, excessive briefing is not necessarily an indicator of a more effective argument.  See Waybright v. Frederick Cnty., 528 F.3d 199, 210 (4th Cir. 2008) ("[W]isdom may reside in recognizing that less is sometimes more and that zealous advocacy need not always part company with forbearance and restraint."); see also W. Shakespeare, Hamlet, Act 2, scene ii ("[B]revity is the soul of wit.").  In any event, a six-page response filed during the course of motions practice is not the type of "extraordinary circumstance" that courts have relied on when granting Rule 60(b)(6) motions.

was only during these depositions that they learned Collins had agreed to a sanction of $2,500 for failing to participate in discovery.  Id.

In Smith v. Bounds, 813 F.2d 1299, 1305 (4th Cir. 1987), the Fourth Circuit found that the district court properly struck denied a 60(b)(6) motion where the defendants "knew or should have known" that counsel had a history of failing to respond to the court's orders, based on counsel's "decade-old pattern of neglect and delay." While Collins may not have displayed the decades-long pattern of neglect of the attorney in Bounds, the Banks suspected that Collins may have been negligently handling their case—if not by March 1, 2016 when Collins failed to prepare them for their depositions, then certainly by June 2016 when Collins stopped responding to the Banks's repeated requests for status updates on the case.  The Banks's testimony demonstrates that although they had concerns regarding Collins's representation, they made the decision to continue with him as their attorney until Collins was suspended and they were forced to find a new lawyer.

Additionally, the Banks have not asserted that Collins's suspension was in any way related to his conduct working on their case, simply stating that Collins was being investigated "for some kind of alleged professional misconduct."  ECF No. 73 at 3.  A review of the South Carolina Supreme Court order suspending Collins does not reveal if Collins was disciplined for his work on the Banks's case.  Matter of Collins, 789 S.E.2d 577 (S.C. 2016).  Although the timing of Collins's suspension from the practice of law may have been fortuitous for the Banks to file this motion, the mere fact that Collins was suspended six days after the court issued the July 2016 order does not mean that he was suspended as a result of his work on the Banks's case.

Further, the Banks argue that because of Collins's "serious[s] neglect[t]" they are without a means to remedy the damage caused by the 2011 fire to their home, and that without an order to set aside judgment, Belfor will receive a windfall profit. ECF No. 73 at 1. In Thomas v. Cumberland Cty. Sch., 2011 WL 10045248, at *4 (E.D.N.C. Mar. 18, 2011), aff'd, 435 F. App'x 231 (4th Cir. 2011), the court denied a Rule 60(b)(6) motion where its previous order on the stipulation of dismissal did not bar a plaintiff's Title VII retaliation action. Similarly, while the July 2016 order granted summary judgment on the Banks's counterclaims for negligence per se, negligent construction, and negligent damage to antiques counterclaims, it allowed the Banks to proceed to trial on the breach of contract claim. ECF No. 65 at 20. The Banks will have an opportunity to litigate the remaining breach of contract claim before a jury.

The party seeking relief under Rule 60(b)(6) must also demonstrate that the opposing party will not suffer unfair prejudice by having the judgment set aside. Aikens v. Ingram, 612 F.3d 285, 289 (4th Cir. 2010). The Banks argue that while Belfour has received a favorable order in the motion for summary judgment there has been no final judgment on the case. That may be, but the Banks ask the court to set aside the July 2016 order and reset the scheduling order to allow the Banks to submit expert disclosures and pursue discovery. ECF No. 73 at 6. Belfor contends that this would be unfair prejudice because it has already engaged in discovery, taken depositions and paid for court reporters, and subpoenaed nonparties. ECF No. 77 at 12. Belfor states that it has spent over $90,000 in attorney's fees and costs in the case so far, including the costs associated with the drafting and arguing of the very dispositive motions that the Banks now seek to relitigate. Id. If the court were to set aside judgment and grant the Banks the new

scheduling order that they seek, it would necessitate reopening discovery and force

Belfor to go through the entire process and expense once again.  To force Belfor to go

through the entire process and expense of discovery and relitigating dispositive motions

would unfairly prejudice Belfor.

   Finality is another important consideration here.  Rule 60(b)(6) is construed

strictly to preserve the finality of judgments, so that only "extraordinary circumstances"

will justify relief.  <u>Reid</u>, 369 F.3d at 370; <u>see</u> <u>Wagner Spray Tech Corp. v. Wolf</u>, 113

F.R.D. 50, 51 (S.D.N.Y. 1986) ("[The movant's] interest in undoing the results of a

litigation strategy which, in hindsight, appears unwise fails to outweigh the judiciary's

interest in the finality of judgments.").  Collins may have made some strategic choices in

the briefing for the summary judgment motion and the motions to exclude that were

ultimately unwise, but the Banks have failed to demonstrate that his inattentiveness rose

to the level of gross negligence that would justify the extraordinary relief that they seek.

<u>See</u> <u>Robinson v. Wix Filtration Corp. LLC</u>, 599 F.3d 403, 411 (4th Cir. 2010).

   The court is sympathetic to the Banks's predicament, but finds that Collins's

allegedly sloppy lawyering is not grounds for granting such an extraordinary remedy as a

60(b)(6) motion.  The Supreme Court has reasoned that where a party "voluntarily

chooses" his attorney

> he cannot [] avoid the consequences of the acts or omissions of this freely
> selected agent.  Any other notion would be wholly inconsistent with our
> system of representative litigation, in which each party is deemed bound
> by the acts of his lawyer-agent and is considered to have 'notice of all
> facts, notice of which can be charged upon the attorney.'

<u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 632 (1962) (internal citations omitted).  <u>Link</u> did

not decide whether it would have been an abuse of discretion to deny a Rule 60(b)

motion, since the aggrieved party never filed one.  Id. at 634.  However, the Court has

applied the principle that clients must be held accountable for the acts and omissions of

their attorneys in a number of situations.  See, e.g., United States v. Boyle, 469 U.S. 241

(1985) (holding that a client can be penalized for his attorney's untimely filing of a tax

return); Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 397

(1993) (holding that clients are accountable for their counsel's failure to file their proofs

of claim in a case under Bankruptcy Rule 9006(b)(1)).  The Fourth Circuit has similarly

held that "a lawyer's ignorance or carelessness do not present cognizable grounds for

relief under [Rule] 60(b)."  Evans v. United Life & Accident Ins. Co., 871 F.2d 466, 472

(4th Cir. 1989).  The court hesitates to expand the scope of Rule 60(b)(6)'s application to

encompass what is essentially a legal malpractice claim.[2]  Accordingly, the court denies

the Banks's motion.

---

[2]        The Banks state that Collins "apparently" has no malpractice coverage, and so
without the court setting aside the July 2016 order that the Banks will have "no other
remedy."  ECF No. 73 at 5.  In granting a 60(b)(6) motion, some courts have found it
persuasive that an attorney lacked malpractice insurance.  See James v. United States,
215 F.R.D. 590, 594 (E.D. Cal. 2002) (In granting a 60(b)(6) motion, court considered
that "a malpractice action is clearly an inadequate remedy in this case because Olives . . .
apparently has no malpractice insurance or assets to his name.").  However, the court is
unaware of any in-circuit decisions holding that an attorney's lack of malpractice
insurance is sufficient to grant a 60(b)(6) motion where there are no independent
"extraordinary circumstances" to warrant it.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the Banks's motion to set aside the judgment.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January  26, 2017**
**Charleston, South Carolina**

10